UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Insight Technology, Inc.,
     Plaintiff

     v.                                    Civil No. 03-cv-253-JD

Glock, G.M.B.H. and Glock, Inc.,
     Defendants

**REPORT AND RECOMMENDATION**

Plaintiff moved for enforcement of a settlement agreement. Defendants' opposition is directed at the particular agreement plaintiff sought to enforce — not at whether there is an agreement to be enforced. An evidentiary hearing was held on April 11, 2007, to determine whether the parties in fact reached an enforceable settlement agreement.

**Background**

Plaintiff sued defendants claiming an infringement of its '901 Patent. To quote plaintiff's Claim Construction Brief (document no. 48):

> The '901 patent includes 35 claims . . .
> Claim 1, the broadest claim, captures the
> basic features of the patented invention. It
> recites that the invention is "[a]n auxiliary
> device for use with a weapon." . . . The
> auxiliary device includes five broad
> elements:  a housing, a source of
> illumination, a first structural member, a
> second structural member, and a spring-biased
> mechanism.

Id. at 5.  Essentially the patent covers the mechanism for attaching an enclosed "light" to the barrel of a pistol.  See id. at 1.

The parties mediated the case before David Plant, Esq., a highly skilled mediator with particular expertise in intellectual property.  In an exchange of emails, counsel confirmed to each other that the clients and counsel had agreed to a settlement on October 28, 2006.

### Discussion

The terms of the October 28 agreement are set forth in plaintiff's Exhibit 5, which was admitted into evidence without objection.  Since the settlement agreement is confidential, as are the exhibits, I will not set out all of its terms here.

The term which led to this dispute over settlement was plaintiff's covenant not to sue defendants for the "GTL line of products in their current configuration."  Within six days of reaching the agreement, plaintiff circulated a draft of a more formal agreement which changed the language "in their current configuration" to "identical in structure and performance to GTL products sold in the United States prior to September 1, 2006."  Defendants did not comment on or question the change until drafts had been circulated and it was time to execute the agreement in December.  They then inquired whether plaintiff was now taking the position that Glock could not change the light bulbs, lenses,

or switch to LED lighting.  Plaintiff confirmed defendants' understanding and replied that "upgrades" in the product line were not protected by the covenant not to sue.  Although plaintiff's counsel claimed it was not materially altering or amending the agreement, that is precisely what they were trying to do.  Defendants refused to execute the agreement with the changed language.

Plaintiff did not move to enforce the October 28 agreement, but rather sought enforcement of the subsequent draft with the altered language that defendants had questioned.  At the hearing, plaintiff switched direction and requested enforcement of the October 28 language.  Since this is precisely what defendants requested in their "opposition," the solution appeared obvious and quick.  However, when pressed, plaintiff's counsel would not admit that the October 28 language -- "in their current configuration" -- was truly different from the language it sought in the "formal" agreement -- "identical in structure and performance."  Plaintiff would not concede that the language "in their current configuration" permitted certain changes, for example in the type of illumination used, and instead insisted "current configuration" in fact meant "identical in structure and performance."

It is clear that the parties intended the October 28 email to be a binding agreement settling the case.  The parties agreed

that plaintiff's exhibit 5 set forth all of the terms of the October 28 agreement. The question is whether there was a meeting of the minds as to the meaning of the phrase "in their current configuration," so that an actual contract can be found.

This Court has the "inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before [the] court." Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983); see Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 853 (1st Cir. 1987) (explaining the court's authority to discern whether a settlement had been reached and, if so, to enforce it). A settlement agreement is a contract, the meaning of which is to be determined by principles of state contract law. See Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1166 (1st Cir. 1994). There is no enforceable agreement, however, if there was no meeting of the minds. Wang Labs., Inc. v. Applied Computer Scis., Inc., 958 F.2d 355, 359 (Fed. Cir. 1992) (reversing enforcement of an unexecuted draft). Under New Hampshire law, the intent of the parties is determined from the plain language used. Behrens v. S.P. Constr. Co., 153 N.H. 498, 503, 904 A.2d 676 (2006). One looks at the objective meaning of the words — what would a reasonable person expect the words to mean. Id. at 502. Parol evidence is considered only if there is an ambiguity. Id. at 501.

A reasonable person's understanding and the clear objective meaning of the word "configuration" are not in dispute.  See Pltf.'s Motion to Enforce Settlement Agreement (document no. 80.2, p.7) and Defs.' Objection (document no. 89, p.20).  Both sides agree that "configuration" means "the relative arrangement of parts or components."  Merriam-Webster's Collegiate Dictionary, 10th Ed., def. 1.  The entire context of this suit involves an illuminating device, which has a housing, a source of illumination, and structural and spring mechanisms which are used to attach the device to a weapon.  As long as these relative components of the GTL series are unchanged, i.e., remain in the current configuration, plaintiff has covenanted not to sue.  There is no hint in the language or the context of the settlement reached on October 28 to restrict the covenant to the specific lens or light source used in the GTL series prior to September 1, 2006.  Had the parties intended that to be the case, they could easily have stated that.  Instead, the parties used "current configuration," which is unambiguous and must be given its plain meaning.  Accordingly, I find there was a meeting of the minds on the language of the October 28 agreement.

I recommend that the parties be ordered to immediately execute and perform the October 28 agreement, as set forth in Exhibit 5, with their expressed intent as set forth above.

Plaintiff moved for an award of attorneys' fees alleging bad faith in the settlement process.  While it clearly was a typo, plaintiff, at page 9 of its motion, states that

> there can be no doubt that the <u>plaintiff</u> proceeded in bad faith with the settlement process.  (Emphasis added).

Although plaintiff did not mean to say that, I find the statement is correct.  I base my finding on the following:

First, the language change introduced by plaintiff in the "formal" draft is a clear departure from the language of the October 28 agreement.  While the introduction of the concept "identical in structure" is not patently inconsistent with "current configuration," the addition of "identical performance" is a significant shift in meaning.  There is little doubt that defendants should have caught the change earlier but, once they did, it is clear plaintiff did not act in good faith in insisting on the new language, as if it in fact memorialized the October 28 agreement.

Second, the plaintiff's motion sought to enforce the changed language, not the language of October 28.  Even plaintiff recognized that that effort was both futile and disingenuous.  At the hearing, it switched to seeking to enforce the October 28 agreement.  However, in the face of an obvious agreement with an obvious intent, plaintiff persisted in its effort to paint the October 28 language with the plaintiff's view of the constraints

6

on defendants created by the new language.  Plaintiff's position is untenable and unsupported.  Its efforts are in bad faith.

As plaintiff points out, attorneys' fees may be assessed where a party proceeds in bad faith in refusing to recognize a settlement agreement or to abide by its clear terms.  See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); see also Moss v. McDonald's Corp., No. Civ. 03-5000 (GEB), 2006 WL 680985, *5-6 (D.N.J. March 13, 2006); In re Elonex Phase II Power Mgmt. Litig., Nos. Civ. A. 01-082 GMS, etc., 2003 WL 21460391, *3-4 (D.Del. June 23, 2003).  I recommend that defendants be awarded their reasonable fees and costs in connection with the motion and hearing.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


                                    /s/ James R. Muirhead
                                    James R. Muirhead
                                    United States Magistrate Judge


April 13, 2007

```
cc:  Craig R. Smith, Esq.
     Daniel E. Will, Esq.
     George R. Moore, Esq.
     Gregory A. Madera, Esq.
     Lawrence K. Kolodney, Esq.
     Thomas A. Brown, Esq.
     Jonathan M. Shirley, Esq.
     Irvin d. Gordon, Esq.
     John Renzulli, Esq.
     Jonathan Hangartner, Esq.
```